UNITED STATES v. C. O. MASON, INC.   (No. 5130)*
UNITED STATES v. BORDAS & COMPANY   (No. 5133)*
UNITED STATES v. GUILLERMO ARBONA COLL, INC.   (No. 5134)*
UNITED STATES v. PAN AMERICAN STANDARD BRANDS, INC., GEO. SANDERS & CO., INC.   (No. 5135)*

---

*C.A.D. 844.

United States Court of Customs and Patent Appeals, June 18, 1964

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, for the United States.

*Harold A. Segall, Robert Layton* (*Gilbert, Segall and Young*, of counsel) for *C. O. Mason, Inc.*

*James R. Sharp, Myron Solter* (*Sharp & Bogan*, of counsel) as *amicus curiae*.

[Oral argument April 7, 1964, by Mr. Vance, Mr. Layton, and Mr. Solter as amicus curiae.]

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, for the United States.

*Jaime Pieras, Jr., Pieras & Martin*, for *Bordas & Company*.

*James R. Sharp, Myron Solter* (*Sharp & Bogan*, of counsel) as *amicus curiae*.

[Oral argument April 7, 1964, by Mr. Vance, Mr. Pieras, Jr., and Mr. Solter, as amicus curiae.]

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, for the United States.

*Pedro E. Muniz Ramos*, for *Guillermo Arbona Coll, Inc.*

*James R. Sharp, Myron Solter* (*Sharp & Bogan*, of counsel) as *amicus curiae*.

[Oral argument April 7, 1964, by Mr. Vance and Mr. Solter as amicus curiae; submitted on record by appellee]

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, for the United States.

*Julian O. McConnie, Jr.*, for *Pan American Standard Brands, Inc., Geo. Sanders & Co., Inc.*

*James R. Sharp, Myron Solter* (*Sharp & Bogan*, of counsel) as *amicus curiae*.

[Oral argument April 7, 1964, by Mr. Vance and Mr. Solter, as amicus curiae; submitted on brief by appellee.]

Before Worley, Chief Judge, and Rich, Martin, Smith, and Almond, Jr., Associate Judges.

Martin, Judge, delivered the opinion of the court:

These four appeals are from four judgments of the United States Customs Court, Third Division (C.D. 2364, C.D. 2373, C.D. 2372, and C.D. 2371), dismissing protests against the liquidations of the Collector of Customs at San Juan, Puerto Rico, assessing the duty on entries covering coffee imported into Puerto Rico, and ordering the collector at San Juan to liquidate the entries so that timely protests may be filed against the liquidations if so desired. The authority of the collector to liquidate derives from section 505 of the Tariff Act of 1930 which reads:

The consignee shall deposit with the collector, at the time of making entry, unless the merchandise is entered for warehouse or transportation, or under bond, the amount of duty estimated to be payable thereon. Upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law and shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury, and collect any increased or additional duties due or refund any excess of duties deposited as determined on such liquidation.

The four cases were before the Customs Court on motions by the Government seeking dismissal of appellees' protests on the ground that the protests were filed after the expiration of the 60-day period prescribed in section 514 of the Tariff Act of 1930. Section 514 reads:

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, *shall, upon the expiration of sixty days after the date of such liquidation,* reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), *unless the importer,* consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, *shall, within sixty days after, but not before such liquidation,* reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, *file a protest* in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection

thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation. [Emphasis ours.]

The merchandise involved was imported into San Juan between April 1957 and December 1959. It was assessed with duty at the rate of 36 cents a pound (roasted coffee and ground coffee) and 30 cents a pound (coffee preparation) under section 319 of the Tariff Act of 1930 and Act No. 4 of July 11, 1935 of the Legislature of Puerto Rico, as amended by Resolution of the Secretary of Agriculture and Commerce of Puerto Rico, approved by the Governor of the Commonwealth of Puerto Rico on April 18, 1957, under authority of Act No. 77, approved on May 5, 1931, as amended by Act No. 95 of June 21, 1955. The entries involved were liquidated between June 1957 and December 1959 and the protests were filed between March 1960 and November 1960, each of the involved protests being filed after the 60-day period provided for in section 514 had expired.

A common basis for appellees' protests was the decision of the Customs Court in *Pan American Standard Brands, Inc.*, v. *United States*, 43 Cust. Ct. 122, C.D. 2115, "basically made under date of 15 September 1959," which decision was made final "after a rehearing under date of 19 February 1960" and was not appealed. In *Pan American*, the Customs Court held unconstitutional, as an unlawful delegation of legislative power, the provision of Act No. 95 which empowered the Secretary of Agriculture and Commerce of Puerto Rico to modify, without any guidelines or standards, the rates of duty levied by Act No. 95. It also held invalid the resolution of the Puerto Rican Secretary of Agriculture and Commerce, issued under said statutory provision, and certain duty assessments on coffee imported into Puerto Rico made pursuant to said resolution. The duty rates struck down in *Pan American* represented an increase of 100 per centum over the lawful rates existing prior to April 18, 1957.

The Customs Court in all four cases before us dismissed the protests, not on the ground that they were filed too late, but, on the basis that they were prematurely filed.[1]

The Government argues that the Customs Court lacks jurisdiction over the protests as they were filed after the expiration of the 60-day period prescribed in section 514 of the Tariff Act of 1930. It urges that the majority opinion of the Customs Court failed to differentiate between cases involving (1) complete liquidations in which there has been compliance with all the procedural requirements of liquidation, and which must be challenged by timely protests; and (2) incomplete liquidations, which may be challenged on procedural grounds at any

---

[1] The same judge in the Customs Court dissented from each of the four decisions and would have dismissed the protests on the ground that they were filed too late.

time prior to compliance with the necessary procedures. The Government contends that where the liquidation is found to be incomplete because the collector has not performed all the procedural acts required in liquidating the entries, there has actually been no final legal liquidation and, as a consequence, the protest is properly dismissed as premature and the collector is properly directed to complete the liquidation so that the importer may have an opportunity to question its legality by timely protest. The Government urges, on the other hand, that where a complete liquidation has been made in compliance with all the procedural requirements, as is alleged here, the question of the constitutionality of the statute under which the liquidation was made can be raised only by a timely protest.

Appellees and amicus curiae [2] urge that a liquidation incorporating a rate of duty which derives its only authority from an "unconstitutional statute" is "no liquidation" which will support a protest nor commence running the statute of limitations within the meaning of section 514.

Appellee in CA 5133 further urges that the notices of liquidation involved in CA 5133 "were not posted" and that they should be considered "incomplete, invalid and void."

All four appeals present an identical dispositive issue: Whether protests against the collector's liquidations of duties between June 1957 and December 1959 under a provision of a statutory enactment subsequently ruled unconstitutional by the Customs Court in a decision which became final on February 19, 1960, will lie when the protests were filed more than 60 days [3] after the date the liquidations were made.[4]

The court below found that such protests will not lie since they were prematurely filed, and ordered the Collector of Customs at the Port of San Juan, Puerto Rico, to liquidate the entries "so that a

---

[2] The firm of Sharp & Bogan moved before this court for leave to appear as amicus curiae and to file a single brief in CA 5130, CA 5133, CA 5134 and CA 5135, which motion this court granted on August 26, 1963.

[3] The records indicate the following:

| | liquidations made | protest filed |
|---|---|---|
| CA 5130 | June 1957–Sept. 1959 | July 21, 1960 |
| CA 5133 | Jan.–Feb. 1958 | Nov. 30, 1960 |
| CA 5134 | Aug.–Nov. 1957 | Aug. 4, 1960 |
| CA 5135 | July–Dec. 1957 (4 entries) | June 22, 1960 |
| | Aug. 1957–Dec. 1959 (63 entries) | Mar. 25, 1960 |
| | | (refiled July 15, 1960) |

[4] Concerning the merits of the four cases, the Customs Court in CA 5130 referred to the following statement made by the Government's attorney:

MR. SKLAROFF: We can concede on the merits plaintiff has a case, in that the merchandise in issue is the same in all material respects to C.D. 2115, and if he gets over the hurdle of timeliness, we concede.

JUDGE LAWRENCE: That in the opinion of the attorney for the defendant, the plaintiff is entitled to judgment provided the protest is timely?

MR. SKLAROFF: I have been so informed by the Chief Liquidator here, and the Customs officials here, with respect to all the other cases.

timely protest may be filed against the liquidations if so desired." It proceeded on the theory that the provision of Act No. 95 under which the liquidations were made, having been found unconstitutional, was not a law; that it was inoperative and afforded no basis for the alleged liquidations and subsequent protests; that its invalidity dates from the time of enactment; and that although in some situations, where a statute is declared to be unconstitutional, there may be questions of vested rights and of public policy which cannot be erased by a new judicial determination, no such factors have been presented in the cases at bar. We find no reversible error in those findings.

This court has held in *United States* v. *Astra Bentwood Furniture Co.*, 28 CCPA 205, C.A.D. 147, that a liquidation made under section 505 is void when the "notice of such liquidation" is not given "in the form and manner prescribed by the Secretary of the Treasury" and that such a liquidation, being not a final legal liquidation, is not within the bar of the statute of limitations under section 514. As a consequence a protest against such a liquidation, although filed after the 60 day period prescribed in section 514, is dismissable as being premature. In the *Astra* case it appeared from the record that neither the correct date of the involved entry nor the name of the importer were given on the bulletin notice of the liquidation of the involved entry, and that no notice was ever posted in conformity with the procedure for liquidation set forth in article 820(h) of the Customs Regulations of 1931. The protest was filed three years after the defective bulletin notice was posted, and five days after the Commissioner advised the collector that the request of the importer to post a notice of liquidation of the involved entry was denied. In that case, this court stated:

> In the instant case, it is clear that the provisions of article 820(h) have not been complied with. We are of opinion that as the collector failed to give the notice required by article 820(h), * * * the 60-day period after the liquidation within which the importer might protest, as provided in section 514, * * * has not commenced to run.

It further was unable to find any provision in section 514 which would warrant a holding that the 60-day period within which the importer might protest commenced to run on the date of the refusal of the collector to post the notice of his liquidation in the form and manner required by law, and concluded:

> We hold, therefore, that there has been no final legal liquidation of the involved entry against which, within the purview of section 514, * * * the importer may "within sixty days after, but not before such liquidation" file a protest; that the protest in the instant case is premature, and, therefore, untimely, and should have been dismissed by the trial court.

In conclusion, we think it proper to say that it is the duty of the collector to complete his liquidation of the entry in the manner provided by law so that the importer, if it sees fit to do so, may protest the liquidation within the time prescribed by section 514, * * *.

The Government concedes that "procedural questions" such as the Government's failure to give a "complete" notice of liquidation as in the *Astra* case "may be raised at any time" prior to the collector's compliance with and completion of the proper liquidating procedures on the ground that there has been no final legal limitation of the involved entry to start the running of the statute of limitations within the purview of section 514. On the other hand, the Government contends that a liquidation which has been made in compliance with all procedural requirements of liquidation but which was based on a provision of a statute subsequently held to be unconstitutional can be challenged only by a timely protest. We are unable to find any reasonable basis for that distinction. As with a liquidation involving "procedural questions," we think that ▮ a liquidation based on an unconstitutional provision of a statute is not a final legal liquidation to start the running of the statute of limitations within the purview of section 514.

Section 505, which authorizes liquidation, mandatorily requires the Collector of Customs to give notice of liquidations not only "in the form and manner prescribed by the Secretary of the Treasury" but also "as provided by law." We do not think that ▮ a liquidation made pursuant to a provision of a statute subsequently declared to be unconstitutional is a liquidation "as provided by law." As the Supreme Court stated in *Norton* v. *Shelby County*, 118 U.S. 425, 442 (1886):

* * * An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.

We further think that ▮ the language itself in section 514 indicates that Congress did not intend the 60-day requirement in section 514 to be completely controlling in every case. Thus section 514 requires that protests be filed within 60 days after a liquidation, *but not before* a liquidation.

What, then, is the proper case which Congress intended will stay the 60-day requirement? It seems to us that a liquidation based on an unconstitutional provision of a statute would certainly involve such a case since an unconstitutional provision of a statute is void *ab initio*.

We recognize that in some situations, when a statute is declared unconstitutional, there may be questions of vested rights and of public policy which cannot be erased by a new judicial determination.[5] However, we agree with the Customs Court that no such factors have been presented in the cases at bar.

[5] See Sutherland. Statutory Construction, § 111 (1964).

We find no merit in the Government's contentions that if a liquidation based on an unconstitutional statute is to be opened by late protest, customs officials will be required to retain records and documents indefinitely and that this would be contrary to law.[6] We think ▮ Congress intended that administrative housekeeping regulations should bow to constitutional supremacy. Moreover, if liquidation records should be destroyed, we agree with the amicus curiae that the necessity for the plaintiff in every action raising the validity of a liquidation to establish the relevant facts by competent evidence would prevent any hardship on the Government. In *Olavarria & Co., Inc.* v. *United States*, 47 CCPA 65, C.A.D. 729, an importer contended that it was under no obligation to file protests because notices of liquidation were never given by the Government in the manner required by law. In that case there was no evidence relating specifically to the notices of liquidation of the merchandise, official papers having been destroyed as provided by law. ▮ This court, in finding for the Government stated that:

It is, of course, presumed that public officials perform their duties in the manner required by law. *V. Mueller & Co.* v. *United States*, 28 CCPA 249, C.A.D. 152; *United States* v. *Henry W. Peabody & Co.*, 40 CCPA 59, C.A.D. 498. It was therefore incumbent on the importer to show by competent evidence that notice of liquidation of the merchandise was not given in the manner required by the applicable statutes and regulations, * * *

It has been suggested by the Government that appellees' protests are barred by laches, although it is conceded that this defense was not raised at the trials below. ▮ When laches is not raised below, we do not think it is available on appeal. See *United States* v. *Webb*, 16 Ct. Cust. App. 156, T.D. 42790.

Therefore, we agree with the dismissal of the involved protests by the Customs Court for the reason that the protests have been prematurely filed, and consider that it is the collector's duty to assess duties against the involved entries and liquidate the same in the manner provided by law.[7]

The judgments of the Customs Court are *affirmed*.

---

[6] The Government states that at least one or more of the involved entries was destroyed in accordance with the General Services Administrative Records Control Schedule, Bureau of Customs Comprehensive Schedule No. 2, Part VI, approved in House Report 2605, 83d Congress, Second Session, August 3, 1954, as provided for in 44 U.S.C. 366–380.

[7] Since we find that the Customs Court properly dismissed the protests as being premature on the ground that they were based on an unconstitutional provision of a statute,. the question of the legality of the notices of liquidation in CA 5133 becomes moot.

